I never argued with the United States v. Bizzell or Bizzell. I never argued with the United States v. Bizzell or Bizzell or Bizzell. Good morning, Your Honors, and may it please the Court. My name is Keith Donohue, and I represent the appellant, Anthony Bizzell. I'd like to reserve three minutes of my time for rebuttal, if I may. Granted. Your Honors, to attempt something of a segue from the last case, which touched on the forgiving standard of the sufficiency of the evidence, this case involves very much the opposite, and that is whether the government can prove beyond a reasonable doubt that the erroneous admission of a full and complete confession did not contribute to the guilty verdict rendered. The case involved a textbook Miranda error. My client was arrested and taken into custody on a charge of unlawful possession of a firearm. After his arrest, an officer asked him this question, Why did you have a gun? And according to the officer, he received in response the answer, I always carry a gun because I've been shot at before. This error was so egregious that on appeal, the government has been required to concede Miranda error. It also concedes that confessions are often among the most damaging of evidence that can be introduced against a defendant. Notwithstanding those confessions, the government is attempting to persuade this Court that the error in this case was harmless. Was this argument presented to the district court? The argument that there was Miranda error? Yeah. Yes, it was. There were written objections at the sentencing hearing, two written objections, and they dealt with the floor-level enhancement and the use of the marijuana conviction. But I should just ask you, how was this presented? How was it preserved in the district court? We're speaking here of the Miranda error rather than the errors at sentencing? Is that correct, Your Honor? Right. It was raised by written motion in supporting memorandum, and it was argued at a hearing. There was testimony from several officers on the issues, and the district court ruled on it at page 60 of the appendix. Okay. And then the sentencing error, how was that preserved? The sentencing error was preserved at the sentencing hearing where the defense both disputed that Mr. Boesel had ever pointed a gun at any officer, vigorously and vehemently disputed that point, and also disputed that Mr. Boesel had previously been convicted of a felony-controlled substance offense. Was it part of the written submissions? It was part of the argument at the sentencing hearing. All right. Mr. Donohue, under the facts of this case, what other evidence would the government have had to present to have, to be able to survive the harmless error issue as you presented it here? It would have had to present some evidence other than police testimony that had significant inconsistencies in it. That was the only evidence presented in this case apart from the full and complete confession. So this court's precedents offer some indications of evidence that might have sufficed to sustain the convictions. In several cases when a confession has been erroneously admitted, there's been a full and complete confession properly admitted, separate and apart from that. Frequently there's forensic evidence of some kind that's been introduced. Sometimes there have been inculpatory statements made by the defendant to third parties before being arrested. Sometimes the defendant testifies, and his testimony is so riddled with inconsistencies that the Court of Appeals finds it unable to reverse the conviction. None of that was presented in this case. This is not your standard harmless error case where there is a Miranda violation. It's a very strict test, and the government has to prove beyond a reasonable doubt that defendant's statement to Officer O'Connell did not contribute to his conviction, or I guess stated in the words of Sullivan, that the guilty verdict was surely unattributable to the error, and the error is conceded here. It seems to me, and perhaps I'm wrong, that the only element in dispute in this case was the knowing possession of the weapon, correct? Correct. And Officer O'Connell's testimony relating the defendant's statement went directly to that unproven element. It's an amazing statement that he testified to. I always carry a gun, so it knocked that element right out of controversy. That's correct, Your Honor. Well, is there a – is there – since apart from that testimony, there was also the testimony of the police officers who said – the one officer who said, I saw him have the gun, I saw him point it at me. He had that eyewitness testimony and the recovery of the gun from the immediate vicinity, like real immediate vicinity after they tackled him. Could – is it appropriate to take the government's argument to heart and say, well, that was the credible and believable testimony, regardless of the comment that was elicited during the booking? Any reasonable jury would have said, yeah, the officer saw him, he pointed at him, tackled him, there was the gun right there, of course he had the gun. What's wrong with that reasoning? I don't believe it's possible for this Court to conclude beyond a reasonable doubt that a jury would have reached that verdict. The Court needs to consider how extraordinary a full and complete confession affects any jury. The Supreme Court in the Fulminante case has stated as a matter of law that that's true. It did so 20 years ago. And it said, in response to the more particulars of the government's case, that the problem with a confession is that it tempts the jury to ignore all the other evidence. So that in this case, the jury had no reason to consider the significant inconsistencies for which the defense developed evidence in the record. Your government – your Honor mentioned one fact, which is that an officer testified. The testimony was never credited by the Court. An officer testified that during a chase, Mr. Bizzell suddenly turned around and pointed a gun at him. There were two other officers looking at Mr. Bizzell from virtually exactly the same vantage point. On this vantage point issue, I would submit to Your Honors that the government's brief is highly inaccurate in representing the vantage points from which the several officers perceived the defendant. Neither of those two officers saw any turning and pointing of the gun. You've made a very, very important part of your argument is analyzing this high-speed, harrowing chase that was over in minutes. They raced a block and a half, then turned down an alley, and it was over. Analyzing it under a microscope, is that really what you can do here? I don't believe we are analyzing it under a microscope. This is not a case where the defense was left to spin out a theory in its closing argument. This was a case where the defense, during the prosecution's case in chief, elicited evidence that gave the jurors reason to doubt the officers. There was the inconsistency I've mentioned already about the mystery of how two officers could not see this dramatic gesture that one officer saw. And the very fact that the chase was taking place so quickly demonstrates why an officer's testimony that the defendant suddenly turned around made this dramatic gesture. It's difficult to believe when his comrades, right in the position he was in, didn't see that. Wasn't the defendant's defense that there had been a previous scuffle at 1145 undermined by the testimony of the officer who came in and said there were no calls about an incident at that location? No, the defense was not undermined. That did not punch a hole in the defense. Why didn't it? Because it established that the record of calls would only refer to that incident if there had either been a 911 call or if the police had radioed the incident in. If neither of those things had happened, there would have been no record in the document discussed at trial. I think this Court should perhaps look to the case of the United States v. Brownlee, which supports some very helpful instruction in this area. And perhaps the most important thing that Brownlee says is that it's difficult for the government to argue with effect that a confession did not contribute to the verdict when it submitted precisely the opposite case to the jury. Now here the prosecutor found himself compelled to refer to the confession twice in his closing argument. In the opening phase, he used the words, here we've got the defendant actually admitting to having a gun. In fact, he says those words right after he explains why he thinks the defense theory is wrong. So he uses the confession to do what confessions always do. They kill the defense and keep the jury from considering that defense. In his rebuttal, the prosecutor put the confession up on a screen and said, there it is in black and white. So as Brownlee teaches... That was a proper rebuttal argument, though, after the defense said, it's funny it's not in writing. You know, isn't that coincidental? I'm not as troubled by that as you are by the opening. Let me ask you a question. Why else was Officer O'Connell called except to get the statement into evidence? For no other reason, Your Honor. And in fact, Judge Baleson inadvertently alerted the jury that that was the purpose of Officer O'Connell's testimony and therefore underscored what the prosecutor also told the jury. Consider the confession. With respect to the rebuttal, I think it is significant, Your Honor, even though it was proper, because it shows that the prosecutor could not sit content to let the defense's challenge to the confession be considered by the jury. It needed the jury to consider that confession. Well, except the defense was misleading the jury by saying it wasn't in writing, wasn't it? The defense said it wasn't in writing by the officer who wrote it down. I'm sorry, the confession was not made to the officer who wrote it down and impeached the government's case on the fact that the officer claiming that the confession had been made, that that officer had not written anything down. But this, again, underscores, you know, perhaps it wasn't plausible for the defense to challenge the fact that the confession had been made. The point is that there was no other route left to the defense. That's how important the confession was, and that's why it can't be said now, beyond a reasonable doubt, that the confession did not contribute to the verdict obtained. The government relies on an unreported opinion, United States v. Shabazz. Why don't you take that on and, you know, and they say, look, you have improper evidence come in, it's harmless error. Why are they wrong to lean on that case? They're wrong because the statement in Shabazz was barely inculpatory at all. This case is entirely distinguishable because there was a full and complete confession. In Shabazz, the defendant was being booked. He had $2,400 recovered from his person. The cop said, that's a lot more money than I carry around. And the defendant's response was, there's plenty more where that came from, that's it. There was a neutral witness, or perhaps a witness biased in favor of the defense, who corroborated that the defendant had gotten as much as $25,000 from Philadelphia, where the robbery took place, shortly after the robbery. So that would be the first point I'd make, that the statement was barely inculpatory at all. There was also forensic evidence in support of the prosecution's case. Namely, the government could put Mr. Shabazz right at the scene of the robbery. Well, in this case, they could put the gun right between your client's legs. They tackled him. That's pretty darn good physical evidence, isn't it? Well, the only way of establishing, or trying to establish, that the gun was right between my client's legs was through the officer's testimony. In Shabazz, there was forensic evidence putting the defendant at the scene of the crime. There were cell phone records showing that he'd called an accomplice who pleaded guilty in the vicinity of the Walmart that was robbed right before the robbery took place. There was also a videotape of the robbery that one of the co-conspirators narrated to the jury as showing the defendant's body. Mr. Donahue, Shabazz was a presidential opinion, wasn't he? That's correct. My apologies. If the court has no further questions, I'll come back at rebuttal. Thank you. Good morning, Your Honors. My name is Jeffrey Witt. I'm an assistant United States attorney here in the Eastern District of Pennsylvania, and I represent the appellee of the United States of America in this particular case. Turning attention, of course, to the question of harmless error, it is, in fact, the government's position that in this particular case, the evidence against the defendant was overwhelming to the extent that the jury's verdict was surely unattributable to the error. You say in your brief a couple of times you call the admission of the statement a factor, albeit a minor factor in proving defendant's guilt, but isn't that a concession that the statement contributed to the conspiracy, which, after all, is the standard we must apply? I don't take the position that it's a concession. It's a recognition... But you do say it was a minor factor. That is correct. We do say that in the brief, Your Honor, and it's a recognition... If it's a minor factor, isn't it by definition... didn't it by definition contribute to the conviction? I don't suggest that it contributed to the conviction under the standard being that beyond a reasonable doubt the statement was unattributable to the conviction, so that the recognition that it was a minor factor in this case, Your Honor, goes to the existence of the statement. We conceded that, in fact, the statement was... No, you say in the brief, a minor factor in proving defendant's guilt beyond a reasonable doubt. That's what you say in the brief. That is an accurate statement. Now, why else was O'Connell called except to testify to that statement? I mean, you wouldn't have called him to say, I took him to the hospital and asked him his name. No, Your Honor... Which is the only other thing he said. Your Honor, as contained in the appendix, another reason for calling O'Connell was to address the shifting defense in this case, and one of the defense contentions was that at 11.45 p.m. on the prior day this particular incident took place. That was the beginning presentation, and that was, in fact, what the defense counsel argued to the jury in opening, that this particular incident with the defendant occurred at 11.45 p.m. on the prior day. In light of that, calling O'Connell to address the fact that his shift did not start until midnight of February the 24th was significant in countering that defense contention. Even if that's so, Mr. Witt, the fact remains that the questioning of Officer O'Connell and the argument made shows that the government wanted a confession, and you concede it's a confession, right? It's a complete confession to the crime, isn't it? I always carry a gun? We made that confession, yes. So it's a confession, and it's put in front of the jury, and it's emphasized in front of the jury in questioning and in closing argument how, in light of those questions that the government chose to ask and those arguments that the government chose to make, can the government come in here now and say, well, that really had nothing to do with the case, had nothing to do with the conviction. Beyond a reasonable doubt, you can say that had no effect. Well, Your Honor, with regards to the contention that it was emphasized, I would respectfully disagree that it was emphasized. It was, in fact, addressed, and we clearly made that concession. However, the prosecutor, for example, in his closing argument, I was not the prosecutor in the case, but in review of the record, you can recognize that the prosecutor, in his closing argument, my suggestion to the court is that he didn't emphasize the defendant's statement. Well, let me read to you. From page 280, the prosecutor's opening summation, which isn't mentioned in your brief, and then we have the defendant actually admitting to having the gun. He's asked why he's been, why he's arrested. Blank, blank, blank, he goes on. It's understandable he'd be upset. The point is he admitted to the police that he had the gun, which again is consistent with all the other evidence in the case. That's pretty strong stuff, isn't it? Well, that's correct, Your Honor. I don't diminish the fact that it's strong, but I do would like to point out to the court the emphasis placed on the fact that it was consistent with all the other evidence. The prosecutor in this case essentially went through all of the evidence piece by piece that was presented to the jury, and in arriving at that part of the case made reference to the entry of that particular statement but pointed out that that statement, as opposed to emphasizing the statement or suggesting that that statement would be a basis for finding this defendant guilty... And the prosecutor didn't emphasize that Officer O'Connell came on duty at 12 o'clock. Didn't even mention that. Not in his closing argument, but certainly as part of the testimony. And in his closing argument, he made reference to the fact that the officers... that the idea that the events occurred at 11.45 p.m. on the prior day was inconsistent with the officers' testimony about their respective entry on duty. Mr. Witt, how do you get around our decision in U.S. v. Brownlee? Well, Your Honor, with regards to the decision in U.S. v. Brownlee, I would suggest to the court that part of the problem in that particular case was that the confession was used to bolster the eyewitness testimony and, more significantly, that the government at trial argued that the confession should result in the defendant's conviction. I'm suggesting that in this particular case, there is a distinction in light of the fact that the prosecutor in this case was not pressing the confession for purposes of suggesting that it should result in conviction. Wasn't the prosecutor's use of the admission the equivalent of bolstering the testimony of the one police officer who said he pointed a gun at him? I'm sorry. I said, wasn't the use of the confession in this case the equivalent of bolstering the police officer's testimony? How does that differ from bolstering identification testimony that that's the guy who did it? Here, the police officer who testified is saying that Bissell, not only is the guy I stopped, he's the guy who pointed a gun at me. I would not disagree with the fact that... It seems to me that Brownlee is a very difficult case for you to get around. Well, I think, as I suggested, the situation in Brownlee was magnified as a result of the prosecution actually arguing at trial that the confession should result in the defendant's conviction. In this particular case, the prosecutor was emphasizing the evidence that was presented by way of the direct and non-contradictory testimony of the officers. There was a suggestion, of course, that the officers' testimony was in conflict, and the government certainly disagrees with that. There was no conflict in regards to the testimony of these officers. It was, in fact, pointed out that two of the officers did not actually see the defendant pull the gun. It was Officer Marco who actually saw the defendant pull the gun, but just the fact that the other two officers did not see the gun at the time that the chase was ensuing does not necessarily result in there being a conflict. They didn't say that it didn't happen. All they represented, just as in a situation if three people were standing on a corner where there was a car accident that took place... So that you're using Officer O'Connell's testimony to bolster Officer Marco's testimony. I suggested, Your Honor, that that's not an unfair... That's right. That's not an unfair reading, however... In a case where there's a suggestion the cops are lying. However, Your Honor... There's more than a suggestion. I mean, I will not characterize how I view the defense in this case, but clearly the thrust of it was, you know, it wasn't... they set him up, right? That was the... The inconsistent testimony of the officers. That was the second thrust of the defense argument. Well, right, and that's exactly why O'Connell, it seems, would contribute to the verdict because he bolstered Marco, the one officer who saw him with a gun, saw the defendant with a gun. Yes, Your Honor. That seems... If that's the case, I guess, knowing the standard we have to deal with, I'm left puzzled how it is you think... Well, let me ask the question this way. In Shabazz and a line of cases that went... that were cited with it, there was a whole litany of evidence, and Mr. Donohue started to go through it in the Shabazz case, pointing to the guilt of the defendant. Here, what is the non-confession evidence that's so overwhelming that it makes the confession itself shrink into irrelevance? What do you have? Well, Your Honor, I think in relationship to Shabazz and this case, obviously there was a lot more in Shabazz. It was a different type of case, but if you view this case on the scale that it exists, with regards to the fact that there was a quick chase, there was a possession of a firearm, among the things that you have, first of all, is the defendant himself, when he's initially approached by the officer, essentially says something to the effect that, it wasn't me, I'm just drinking a beer, and he took off, which is circumstantial evidence of guilt. Well, circumstantial evidence of guilt, perhaps, or of a guilty mind, perhaps, but how does that tell you he's got a gun? Well, I think the evidence has to be considered in its totality, so that from that flight on the part of the defendant, then you have the activities as represented by the police officers during their testimony, Officer Marco, Officer Kelly, and Officer Bryan, who engaged in the chase. And Marco seized the gun. Marco seized the gun, and Officer Bryan, who actually subdued the defendant, saw a motion on the part of the defendant towards his waist. He did not testify that he saw the gun, but he saw a similar type of motion. He heard a clank of metal, too, didn't he? That's correct, Your Honor. He also heard the clank of metal, and this was subsequent to hearing Officer Marco announce gun. So that subsequent to subduing the defendant, he heard the clank of metal, and a gun was recovered by Officer Kelly. So that looking at the totality of it, I suggest, that leaves room for the fact that the testimony was overwhelming. Plus, I don't think that we should overlook the fact that in this particular case, there was a shifting defense contention, and the first being that the events, as they related to Mr. Boesel, occurred at 11.45 p.m. on the February 23rd, the night before. Once the testimony was developing, and it became clear that that was an error, as represented by the police, as well as the radio room technician, in regards to what is referred to as the CAD report, then the defense shifted into the context that this was a conspiracy in which the gun was planted on the defendant, which as a result would require the jury to then believe that first of all, these officers, these experienced officers, had retrieved the gun from a prior incident that was not reported in the radio room, or the recovery of a gun, and that they continued to have this gun on their possession at the time that they subsequently encountered Mr. Boesel and engaged in this activity. As well, that one of the officers, either Officer Kelly, Officer Marco, or Brian, would have had to have the gun on them, and when Officer Marco announced gun, somewhere in that scuffle, because the defendant suffered some injuries as a result of the takedowns... With this recitation, aren't you really suggesting how very important the defendant's statement was? Through this recitation, Your Honor, I am suggesting to the court that based on the apparent rejection of this offense by the jury in its verdict, that in fact it was the testimony of the officers in terms of the events as they unraveled that made the jury's determination. How could we know that, since the confession is in front of the jury? Your Honor, quite frankly and candidly, I would suggest to the court that, unfortunately, we never know for sure what the jury is thinking at the conclusion of a verdict. And significantly, in regards to this particular case, what we have to do is make it as... I'm sorry, what the Court of Appeals has to do is make an assessment that beyond a reasonable doubt, this particular confession did not contribute to the verdict. But as far as your question is concerned, I don't think, unfortunately, that any court can ever know for sure what the jury thought. But this isn't a per se rule. It's a determination beyond a reasonable doubt. Let me throw one at you that I'm sure... Excuse me. Are we required to accept your confession of error here? That there was a custodial interrogation. Clearly, there was custody. Are we required to accept your confession of error? No, I don't believe that this court is required to accept our confession of error, Your Honor. I think, in candidness and frankness to the court, with the government having recognized it as error, then it's incumbent upon me to suggest why, if in fact it's error, then it's harmless error. You're quite right. Doesn't... Let me ask the question a little bit differently. Isn't this really a case compounded by the fact that the district court did err in denying the motion to suppress and thereby the prosecutor, the Assistant United States Attorney who tried the case, not only used the confession as part of the evidence, but argued the confession, thinking that he was dealing with a confession, he or she was dealing with a confession, that was found to be properly obtained. Doesn't that compound this case here? Well, I think it compounds the case to the extent, Your Honor, that it places us in the posture that we are now. Right, and now that you're in that posture, you're arguing that the evidence was overwhelming, that it really wasn't needed. And that's... But I just wonder here that if this error was per se, and I don't want to adopt a per se rule here in this case, that's not what I'm talking about, but in a situation where the court had made this error, I just wondered if the case doesn't take on a little bit different complexion. Your Honor, I don't know that it necessarily takes on a different complexion in light of any other case. I'm sorry, I see my time is up. Can I address your question? Of course. In light of any other case where, in fact, there is an error that results from the denial of a suppression motion, so that that alone doesn't take this case into another realm with regards to a consideration of whether or not there's harmless error. Okay. Thank you. Thank you. Rebuttal, Mr. Donahue. Thank you, Your Honors. No one is saying that the defense presented in this case was perfect. Oh, that's... Well, I think that's fair. No one is saying that it's a comfortable defense to... One could characterize it as two typographical errors. That was the defense, right? You could characterize it that way. No, that wasn't the defense. The defense was both the typographical errors and the inexplicable inconsistencies in the police testimony. Counsel for the government says there was a shifting defense. That was not true. I would refer the Court to page 127 of the appendix, where the defense presents its theory at the opening, and to page 292 of the appendix, where it presents the same theory in its closing. And what the consistency of the defense indicates is that it had managed to establish in the record the facts that it was ready to argue, put the officer's credibility in enough doubt that the jury had to make something of it, except that the jury never did have to make anything of it because it had a full and complete confession. That's why it can't be said beyond a reasonable doubt that this error was harmless. Can I ask you a question about something I asked earlier but has really not spent a lot of time on in the briefing or here in argument, and that is your sentencing arguments. We talked about you preserved your objections as to the Miranda thing while you were arguing for suppression. You preserved them at sentencing hearing by arguing at the sentencing. Is there... Well, first, if we were to agree with you about the conviction, nobody has to touch the sentencing stuff, right? Absolutely correct. But if we were to disagree with you and we had to address the sentencing issues, what does it do to a district court if a defendant is permitted to make no objection but come in on the day of the sentencing hearing itself and raise objections for the first time? Is it problematic that there were no written objections here, I guess, is the question I'm asking you. Whether there would be problems with that in general, Judge Bailson actually expressly said that he believed it was appropriate for defense counsel to be raising the objections as he did at sentencing. So in this case, it clearly raised no problem. Under the court's precedent, I also think that it's sufficient for the defense to raise an argument at closing because the standard is that the judge must respond to non-frivolous arguments and address them. These were certainly non-frivolous. But in any event, this case, very importantly, shows Judge Bailson having no trouble whatsoever with the time at which they were raised and happily entertaining them. The problem is that he didn't resolve the factual disputes that were raised. Several more points that I wanted to address from... I see I'm out of time, Your Honors. Would you like me to... We've given you a lot of time, but you can condense them. I believe so. I'll keep it very brief. Government counsel suggests that the prosecution was not stressing the confession. And it seems that Your Honors have expressed some skepticism toward that, which I think is appropriate. But even were it the case that the prosecutor did not stress it, I would submit that's because the confession speaks so powerfully for itself. I think also that Your Honors are absolutely correct in your reading of Brownlee, and it can't be distinguished. Thank you very much. Thank you very much. The case was very well argued. We will take it under advisement.